UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| SHIRLEY T. MARKS | : | DOCKET NO. 05-1502 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On June 14, 2002, Shirley T. Marks filed applications for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. 111-113, 191-194). She alleged an inability to work since June 13, 2002, due to cancer in her right femur. (Tr. 111, 191, 126). The claims were denied at the original and reconsideration levels of the administrative agency process. (Tr. 59-69, 195-196). Thereafter, Marks requested and received an August 4, 2003, hearing before an Administrative Law Judge ("ALJ"). (Tr. 24-58). However, in a December 31, 2003, written decision, the ALJ determined that Marks was not disabled under the Act, finding at Step Five of

the sequential evaluation process that she could make an adjustment to work which exists in significant numbers in the national economy. (Tr. 16-22). Marks appealed the unfavorable decision to the Appeals Council. Yet, on June 23, 2005, the Appeals Council denied Marks' request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On August 23, 2005, Marks sought review before this court. She contends that the Commissioner erred as follows,

1) the Commissioner failed to properly evaluate the medical evidence;

2) the Commissioner failed to properly consider plaintiff's subjective complaints; and

3) the Commissioner improperly utilized the testimony of a vocational expert.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a

medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

*Issue 1:*

The ALJ found at Step Two of the sequential evaluation process that Marks suffered from

severe impairments of status post cancer surgery in her right leg, depression, and obesity. (Tr. 18, 21). However, the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id.*

The ALJ next determined that Marks retained the residual functional capacity for sedentary work, limited by the need to have a sit/stand option, with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 18, 21).[1] She was further precluded from walking on uneven ground. *Id.*

In May 2002, plaintiff was diagnosed with chondrosarcoma (cancer) in her right leg. (Tr. 216). On June 24, 2002, plaintiff underwent surgery to remove the affected area and to insert an endoprosthetic replacement. (Tr. 169-17). The surgery was successful, and fortunately since then, plaintiff has remained cancer free. (Tr. 46-47).

After the surgery, plaintiff initially used a walker and an adduction brace. (Tr. 218). Three months post-surgery, the brace was removed, and she graduated to crutches. *Id.* However, Marks was instructed to wean herself off of the crutches over the next two to three months. *Id.* By nine months after surgery (March 12, 2003), plaintiff's treating physician, Jeffrey J. Eckardt, M.D., stated that the wound looked good, and that she needed to learn to walk with a cane in her

---

[1] Sedentary work entails:
>. . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

4

left hand. (Tr 219). Her physician prescribed physical therapy, and she was directed to return in three months. *Id*.

Plaintiff worked almost until her surgery in June 2002. There is no question that plaintiff was incapacitated for a period of time after her surgery. (*See*, Tr. 48-49). Yet, the issue remains whether plaintiff's impairments prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). The ALJ essentially concluded that within one year of her surgery, plaintiff's residual functional capacity enabled her to make an adjustment to work that exists in significant numbers in the national economy. The ALJ's assessment stemmed primarily upon the testimony of a medical expert, Dr. King, who was present at the August 4, 2003, administrative hearing. (Tr. 19, 48). However, Dr. King's testimony was equivocal at best. For instance, Dr. King stated that plaintiff had to go to the doctor to get something to equalize her lower extremity. (Tr. 47-48). She also had to lose a lot of weight, and then she would be able to gradually return to work. *Id*.[2] When asked whether plaintiff met a listing from June 2002 until June 2003, Dr. King opined that he thought so; "[i]t would take her a year to get back in shape from . . ." (Tr. 48-49).[3] The ALJ then asked,

> Q. So what you're telling me is that the condition plus the surgery plus the recuperation period of time, in your opinion, lasted one year. What about ongoing?
> A. I would think that with proper physical therapy and weight and . . .[4]

---

[2] Later, Dr. King opined that starting off, plaintiff could only work for four hours. (Tr. 55). He further stated that she could soon return to work – with therapy. (Tr. 56).

[3] The ALJ interrupted the medical expert's answer with another question. (Tr. 49).

[4] Whereupon, the ALJ again interrupted Dr. King's response.

5

(Tr. 49).

Eventually, the ALJ directly asked whether the medical expert thought that Marks had been incapacitated from performing a significant range of sedentary work for 12 months, starting in June 2002. (Tr. 50-51). Dr. King looked at Marks' x-ray records and noted that plaintiff's doctors seemed happy with the cure, and thus he felt that her doctors believed she could go about her business. *Id.* In other words, Dr. King's opinion was based upon his perception that plaintiff's doctors had released her to return to work.

Unbeknownst to the medical expert and the ALJ, plaintiff's treating physician, Dr. Eckardt, had written a May 16, 2003, letter, stating that plaintiff had been disabled since May 8, 2002, that she was unable to work, and that she remained totally disabled through May 15, 2003. (Tr. 231). Dr. Eckardt further stated that he needed to see Marks regularly, and that when she was able to, he would gladly return her to duty. *Id.*

Although, we recognize that a doctor's opinion that a claimant is "disabled" or "unable to work" is afforded no special significance under the regulations,[5] Dr. Eckardt's statement is probative because it establishes that Marks was still under his care and had not been released to work.[6] This, of course, was a key assumption of Dr. King's opinion that Marks' recovery period did not exceed 12 months.[7]

---

[5] 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

[6] Dr. Eckardt's letter is consistent with his notes from March 12, 2003, wherein he prescribed physical therapy and directed plaintiff to return in three months. (Tr. 219). However, Dr. Eckardt's notes were also not part of the record that was before the ALJ. (*See*, Tr. 197).

[7] We also note that two non-examining agency physicians assessed plaintiff with a residual functional capacity for limited sedentary work as of June 2003. (Tr. 153-160).

Plaintiff contends that she submitted Dr. Eckardt's letter to the ALJ on July 21, 2003 – before the administrative hearing. (Tr. 230-231). However, there is no indication that the Office of Hearings and Appeals received the document. Moreover, during the hearing, the ALJ asked plaintiff's attorney if he had any objection to the proposed documents, which included exhibits 1A through 5F. (Tr. 26). Those exhibits did not include Dr. Eckardt's letter; but plaintiff's attorney raised no objection. *Id.*

In any event, Dr. Eckardt's letter and notes were submitted to the Appeals Council. Thus, the evidence constitutes part of the instant record – provided that it was new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[8] There is no question that Dr. Eckardt's notes and letter are new, because without them, there is little or no indication that plaintiff's treatment and recuperation were ongoing. Moreover, if considered, the new evidence undermines the medical expert's assumption that plaintiff's treating physician had released her to return to work, and the resulting inference that her recuperative period did not last 12 months. (*See*, Tr. 197-232). Finally, the

---

However, the assessments were estimations rendered in August and October 2002, based on the medical record as it existed at that time. *Id*. The non-examining physicians were not privy to plaintiff's ongoing care with her treating physician. Accordingly, they provide little support for the ALJ's determination.

[8] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

7

subsequent evidence pre-dates the administrative hearing, and thus pertains to the relevant period. In sum, we may properly consider the new evidence.

When Dr. Eckardt's newly submitted medical records are applied to Dr. King's less than definitive opinion as to the length of plaintiff's post-surgery recuperative period, any support that Dr. King's impression may have enjoyed, is materially eroded. Consequently, substantial evidence is lacking to support the ALJ's one year post-surgery residual functional capacity assessment. Because the foundation for the ALJ's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, we necessarily find that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence.[9]

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN**

---

[9] We need not address plaintiff's remaining assignments of error.

**ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 23rd day of June, 2006.

```
                    _____
                    ALONZO P. WILSON
                    UNITED STATES MAGISTRATE JUDGE
```